CHERYL D. HAMER
CA State Bar # 112933
**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
12526 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 792-3481
Facsimile: (858) 792-3482
chamer@pomlaw.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

---

DANIEL H. RAUSCH, Individually and On
Behalf of All Others Similarly Situated,

                    Plaintiff,

        v.

MONSTER BEVERAGE CORPORATION,
RODNEY C. SACKS, and HILTON H.
SCHLOSBERG,

               Defendants.

---

No. **'12 CV 2058 L    JMA**

CLASS ACTION

COMPLAINT FOR
VIOLATION OF THE
FEDERAL SECURITIES LAWS

**DEMAND FOR JURY TRIAL**

---

Plaintiff Daniel H. Rausch ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Monster Beverage Corporation ("Monster" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial

1    evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

2    discovery.

3                                      **NATURE OF THE ACTION**

4          1.       This is a federal securities class action on behalf of a class consisting of all persons

5    other than defendants who purchased or otherwise acquired Monster securities between February

6    23, 2012 and August 9, 2012, both dates inclusive (the "Class Period"), seeking to recover

7

8    damages caused by defendants' violations of the federal securities laws and to pursue remedies

9    under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5

10   promulgated thereunder against the Company and certain of its top officials.

11         2.       Monster markets and distributes energy drinks, fruit juices, smoothies, juice

12   cocktails, iced teas, lemonades, and still water.  The Company distributes its beverages in the

13
     United States and overseas.
14

15         3.       Throughout the Class Period, Defendants made materially false and misleading

16   statements regarding the Company's business, operational and compliance policies. Specifically,

17   Defendants made false and/or misleading statements and/or failed to disclose that: (i) the

18   Company was improperly advertising, marketing and promoting its Monster Energy® brand of

19
     energy drinks; and (ii) as a result of the above, the Company's financial statements were
20

21   materially false and misleading at all relevant times.

22         4.       On August 8, 2012, after the market closed, the Company disclosed financial

23   results that failed to meet analysts' expectations.

24         5.       On this news, Monster stock declined $6.57 per share or nearly 10%, to close at

25   $61.20 per share on August 9, 2012.

26         6.       The next day, after the market closed, the Company disclosed that it had "received

27   a subpoena from a state attorney general in connection with an investigation concerning the

28

**Class Action Complaint for Violation of the Federal Securities Laws**                              2

1  Company's advertising, marketing, promotion, ingredients, usage and sale of its Monster Energy®
2  brand of energy drinks."

3       7.     On this news, Monster stock declined an additional $6.93 per share or nearly 11%,
4  to close at $54.27 per share on August 10, 2012.

5       8.     As a result of defendants' wrongful acts and omissions, and the precipitous decline
6  in the market value of the Company's securities, Plaintiff and other Class members have suffered
7  
8  significant losses and damages.

9                                  **JURISDICTION AND VENUE**

10      9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of
11  the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17
12  C.F.R. § 240.10b-5).
13  
14      10.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of
15  the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

16      11.    Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C.
17  §78aa and 28 U.S.C. §1391(b), as Monster's principal place of business is located within this
18  District.

19      12.    In connection with the acts, conduct and other wrongs alleged in this Complaint,
20  defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,
21  including but not limited to, the United States mail, interstate telephone communications and the
22  
23  facilities of the national securities exchange.

24                                        **PARTIES**

25      13.    Plaintiff as set forth in the attached Certification, acquired Monster securities at
26  artificially inflated prices during the Class Period and has been damaged thereby.

27      14.    Defendant Monster, formerly named Hansen Natural Corporation, is a Delaware
28  

---

**Class Action Complaint for Violation of the Federal Securities Laws**                                    3

corporation with principal executive offices located at 550 Monica Circle, Suite 201, Corona, California 92880. Monster's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "MNST."

15.    Defendant Rodney C. Sacks ("Sacks") was, at all relevant times, the Company's Chairman of the Board of Directors ("Board"), Chief Executive Officer a member of the Board of Directors.

16.    Defendant Hilton H. Schlosberg ("Schlosberg") was, at all relevant times, the Company's Vice Chairman of the Board of Directors, President, Chief Operating, Secretary, and Chief Financial Officer.

17.    The defendants referenced above in ¶¶ 15 and 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Monster develops, markets, sells and distributes "alternative" beverage category beverages primarily under several brand names including Monster Energy® and Java Monster®. The Company's Monster Energy® drinks represented 91.2%, 89.9% and 90.0% of its net sales for the years ended December 31, 2011, 2010 and 2009, respectively.

### Materially False and Misleading
### Statements Issued During the Class Period

19.    On February 23, 2012, Monster issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2011. For the quarter, the Company reported net income of $64.5 million, or $0.35 diluted earnings per share ("EPS") and net sales of $410 million, as compared to net income of $49 million or $0.26 diluted EPS and net sales of $319 million for the same period a year ago. For the year, the Company reported net income of $286 million, or $1.53 diluted EPS and net sales of $1.7 billion, as compared to net income of

$212 million, or $1.14 diluted EPS and net sales of $1.3 billion for the same period a year ago.

20.     On February 29, 2012, the Company filed an annual report for the period ended December 31, 2011 on Form 10-K with the SEC, which was signed by, among others, Defendants Sacks and Schlosberg, and reiterated the Company's previously announced annual financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Sacks and Schlosberg, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.     The 10-K represented the following in relevant part concerning the Company's sales and marketing practices:

> Our sales and marketing strategy for all our beverages is to focus our efforts on developing brand awareness through image enhancing programs and product sampling. We use our branded vehicles and other promotional vehicles at events where we offer samples of our products to consumers. We utilize "push-pull" methods to enhance shelf and display space exposure in sales outlets (including advertising, in-store promotions and in-store placement of point-of-sale materials, racks, coolers and barrel coolers) to enhance demand from consumers for our products. We also support our brands with prize promotions, price promotions, competitions, endorsements from selected public and extreme sports figures, personality endorsements (including from television and other well known sports personalities), coupons, sampling and sponsorship of selected causes, events, athletes and teams. In-store posters, outdoor posters, print, radio and television advertising and coupons may also be used to promote our brands.

> We believe that one of the keys to success in the beverage industry is differentiation, making our brands and products visually distinctive from other beverages on the shelves of retailers. We review our products and packaging on an ongoing basis and, where practical, endeavor to make them different, better and unique. The labels and graphics for many of our products are redesigned from time to time to maximize their visibility and identification, wherever they may be placed in stores, which we will continue to reevaluate from time to time.

22.     On May 9, 2012, Monster issued a press release announcing its financial and operating results for the quarter ended March 31, 2012. For the quarter, the Company reported net income of $76 million, or $0.41 diluted EPS and net sales of $454.6 million, as compared to net

income of $55 million, or $0.29 diluted EPS and net sales of $356.4 million for the same period a year ago.

23.    On May 10, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on Form 10-Q with the SEC, which was signed by Defendant Sacks, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Sacks and Schlosberg, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.    The 10-Q represented the following in relevant part concerning the Company's sales and marketing practices:

> Our sales and marketing strategy for all our beverages is to focus our efforts on developing brand awareness through image enhancing programs and product sampling. We use our branded vehicles and other promotional vehicles at events where we offer samples of our products to consumers. We utilize "push-pull" methods to enhance shelf and display space exposure in sales outlets (including advertising, in-store promotions and in-store placement of point-of-sale materials, racks, coolers and barrel coolers) to enhance demand from consumers for our products. We also support our brands with prize promotions, price promotions, competitions, endorsements from selected public and extreme sports figures, personality endorsements (including from television and other well known sports personalities), coupons, sampling and sponsorship of selected causes, events, athletes and teams. In-store posters, outdoor posters, print, radio and television advertising and coupons, may also be used to promote our brands.
>
> We believe that one of the keys to success in the beverage industry is differentiation, making our brands and products visually distinctive from other beverages on the shelves of retailers. We review our products and packaging on an ongoing basis and, where practical, endeavor to make them different, better and unique. The labels and graphics for many of our products are redesigned from time to time to maximize their visibility and identification, wherever they may be placed in stores, which we will continue to reevaluate from time to time.

25.    The statements referenced in ¶¶ 19-24 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: i) the Company was

improperly advertising, marketing and promoting its Monster Energy® brand of energy drinks; and (ii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## **THE TRUTH EMERGES**

26.     On August 8, 2012, after the market closed, Monster disclosed financial and operating results for the quarter ended June 30, 2012 that were below analysts' estimates. Specifically, for the quarter, the Company reported net income of $109.8 million, or $0.59 diluted EPS and net sales of $593 million, as compared to net income of $84 million, or $0.45 diluted EPS and net sales of $462 million for the same period a year ago.  More importantly, the Company's net sales of $593 million and $0.59 diluted EPS, were below analysts' estimates of net sales of $596 million and $0.61 diluted EPS, respectively.

27.     On this news, Monster stock declined $6.57 per share or nearly 10%, to close at $61.20 per share on August 9, 2012.

28.     On August 9, 2012, after the market closed, the Company filed a quarterly report for the period ended June 30, 2012 on Form 10-Q with the SEC, which was signed by Defendant Sacks, and reiterated the Company's previously announced quarterly financial results and financial position.   In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Sacks and Schlosberg, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     The 10-Q disclosed the following concerning an investigation into the Company's advertising practices:

> *State Attorney General Inquiry* — In July 2012, the Company received a subpoena from a state attorney general in connection with an investigation concerning the Company's advertising, marketing, promotion, ingredients, usage and sale of its Monster Energy® brand of energy drinks. As the investigation is in an early stage, it is unknown what, if any, action the state attorney general may take against the Company, the relief which may be sought in the event of any such proceeding or whether such proceeding could have a material adverse effect on the Company's business, financial condition or results of operations.

30.     On this news, Monster stock declined an additional $6.93 per share or nearly 11%,

1   to close at $54.27 per share on August 10, 2012.

2   ## PLAINTIFF'S CLASS ACTION ALLEGATIONS

3   31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

4   Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

5   otherwise acquired Monster securities during the Class Period (the "Class"); and were damaged

6   thereby.   Excluded from the Class are defendants herein, the officers and directors of the

7   Company, at all relevant times, members of their immediate families and their legal

8   representatives, heirs, successors or assigns and any entity in which defendants have or had a

10  controlling interest.

11  32.    The members of the Class are so numerous that joinder of all members is

12  impracticable.   Throughout the Class Period, Monster securities were actively traded on the

13  NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

14  be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

15  thousands of members in the proposed Class.  Record owners and other members of the Class may

17  be identified from records maintained by Monster or its transfer agent and may be notified of the

18  pendency of this action by mail, using the form of notice similar to that customarily used in

19  securities class actions.

20  33.    Plaintiff's claims are typical of the claims of the members of the Class as all

21  members of the Class are similarly affected by defendants' wrongful conduct in violation of

22  federal law that is complained of herein.

24  34.    Plaintiff will fairly and adequately protect the interests of the members of the Class

25  and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has

26  no interests antagonistic to or in conflict with those of the Class.

27  35.    Common questions of law and fact exist as to all members of the Class and

**Class Action Complaint for Violation of the Federal Securities Laws**                                    9

predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Monster;

- whether the Individual Defendants caused Monster to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Monster securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

37.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Monster securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Monster securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38.      Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

39.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.      This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41.      During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.   Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Monster

securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Monster securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Monster securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Monster's finances and business prospects.

43.     By virtue of their positions at Monster, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

44.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Monster securities from their personal portfolios.

45.     Information showing that defendants acted knowingly or with reckless disregard

for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Monster, the Individual Defendants had knowledge of the details of Monster's internal affairs.

46.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Monster.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Monster's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Monster securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Monster's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Monster securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

47.     During the Class Period, Monster securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Monster securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class,

the true value of Monster securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Monster securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     During the Class Period, the Individual Defendants participated in the operation and management of Monster, and conducted and participated, directly and indirectly, in the conduct of Monster's business affairs.  Because of their senior positions, they knew the adverse non-public information about Monster's misstatement of income and expenses and false financial statements.

52.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Monster's financial condition and results of operations, and to correct promptly any public statements issued

by Monster which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Monster disseminated in the marketplace during the Class Period concerning Monster's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Monster to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Monster within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Monster securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Monster. By reason of their senior management positions and/or being directors of Monster, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Monster to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Monster and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Monster.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

1    C.    Awarding Plaintiff and the other members of the Class prejudgment and post-

2  judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

3    D.    Awarding such other and further relief as this Court may deem just and proper.

4                    **DEMAND FOR TRIAL BY JURY**

5

6    Plaintiff hereby demands a trial by jury.

7  Dated:   August 21, 2012            Respectfully submitted,
                                       **POMERANTZ GROSSMAN HUFFORD**
8                                      **DAHLSTROM & GROSS LLP**

9

10

11

12                                     _____
                                       Cheryl D. Hamer
13                                     CA State Bar #112933
                                       12526 High Bluff Drive, Suite 300
14                                     San Diego, CA 92130
                                       Telephone: (858) 792-3481
15                                     Facsimile: (858) 792-3482
                                       chamer@pomlaw.com
16
                                       **POMERANTZ GROSSMAN HUFFORD**
17                                       **DAHLSTROM & GROSS LLP**
                                       Marc I. Gross
18                                     Jeremy A. Lieberman
                                       600 Third Avenue, 20th Floor
19                                     New York, New York 10016
                                       Telephone: (212) 661-1100
20                                     Facsimile: (212) 661-8665
                                       migross@pomlaw.com
21                                     jalieberman@pomlaw.com

22                                     **POMERANTZ GROSSMAN HUFFORD**
                                         **DAHLSTROM & GROSS LLP**
23                                     Patrick V. Dahlstrom
                                       Ten South LaSalle Street - Suite 3505
24                                     Chicago, Illinois 60603
                                       Telephone:  (312) 377-1181
25                                     Facsimile:  (312) 377-1184
                                       Pdahlstrom@pomlaw.com
26
                                       ***Attorneys for Plaintiff***
27

28

**Class Action Complaint for Violation of the Federal Securities Laws**                16